**COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts corporation, Plaintiff,**

v.

**BASIC AMERICAN MEDICAL, INC., an Indiana corporation, Data Scan, Inc., a Michigan corporation; Third Party Services, Inc., d/b/a Data Scan Service, Inc., a Michigan corporation, Donald Waters; David E. Shipman; Louis D. Belcher; Gary Hahn; Deborah L. Hahn; Marla R.S. Hahn; Andrea J.W. Hahn; Richard L. Hutchison; and Elizabeth Hutchison, jointly and severally, Defendants.**

Civ. A. No. 87–73979.

United States District Court,
E.D. Michigan, S.D.

Jan. 26, 1989.

Charles C. Cheatham, Mary Nemeth, MacArthur, Cheatham, Acker & Smith, P.C., Detroit, Mich., for plaintiff.

David J. Hutchinson, Hooper, Hathaway, Price, Beuche & Wallace, Ann Arbor, Mich., for defendant Shipman.

Peter J. Dodge, Lloyd, Rutzky & Dodge, Ann Arbor, Mich., for defendant Belcher.

Elmer L. Roller, Rutledge, Manion, Rabaut, Terry & Thomas, P.C., Detroit, Mich., for defendants Hahn and Hutchison.

Michael J. McCormick, Ypsilanti, Mich., for defendants Basic American, Data Scan, Third Party Services and Donald Waters.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff insurer, Commercial Union Insurance Company (Commercial Union), brings this action for declaratory judgment against its named insureds, Data Scan, Inc. (Data Scan), and Third Party Services, Inc. (TPS), and against its insureds, Basic American Medical, Inc. (BAMI), Donald Waters, David E. Shipman, and Louis D. Belcher.  Both plaintiff and defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Diversity of citizenship and the Declaratory Judgment Act, 28 U.S.C. §§ 1332 and 2201, n. 1, provide the basis for jurisdiction.

Commercial Union requests I find that it has no duty to defend or indemnify defend-

ants against certain suits initiated against defendants in the Washtenaw County Circuit Court by Gary Hahn and his wife and children, and by Richard Hutchison and his wife.[1] Hahn and Hutchison formerly served as officers, directors, and employees of, and owned stock in, Data Scan and TPS. Both Hahn and Hutchison essentially allege that the present defendants wrongfully discharged them and breached a stock purchase agreement between them and defendants.[2]

These underlying state actions arise out of BAMI's acquisition of a controlling interest in Data Scan and TPS. In March, 1985, BAMI entered into a stock purchase agreement with Hahn, Hutchison and others to purchase an 80% interest in Data Scan and TPS. The price of the stock was to be determined in part by the yearly earnings of the two corporations over four years. Hahn and Hutchison contend that in this agreement BAMI promised to loan or provide them with money to satisfy their debts incurred in purchasing the Data Scan and TPS stock and to indemnify them against any future BAMI breaches of this stock purchase agreement.

Concerning their employment contracts, Hahn and Hutchison argue that BAMI; David Shipman, a director and officer of Data Scan and TPS; and Louis Belcher, an officer of these same two corporations, wrongfully dissipated the assets of Data Scan and TPS, rendering their stock virtually worthless. Hahn and Hutchison further allege that they were discharged in retaliation for reporting this corporate waste. Defendants now contend that general liability insurance policies issued to them by Commercial Union require Commercial Union to defend and indemnify them in these two state cases.

Commercial Union asserts, and defendants do not deny, that Commercial Union issued a Broad Form Comprehensive General Liability policy to Data Scan and TPS as "named insureds." BAMI and the individual defendants qualify as "insureds" on this policy.[3] Commercial Union asserts that this general liability policy does not cover the underlying state claims, and now seeks a declaratory judgment to this effect. Alternatively, plaintiff requests that the costs of defense be apportioned, if it has a duty to defend some, but not all, of the underlying state claims. Defendants have also moved for summary judgment, contending that Commercial Union must defend and indemnify them against Hahn and Hutchison's claims.

The Comprehensive General Liability Policy states:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

> The policy defines an "occurrence" as: [A]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Plaintiff argues that it need not defend or indemnify defendants because the un-

---

1. Case numbers 87–33014–CZ and 87–33015–CZ, respectively.

2. Both complaints contain these counts: Count I alleges breach of an implied employment contract; Count II alleges retaliatory discharge; Count III charges intentional infliction of emotional distress; Count IV negligent job evaluation; Count V negligent breach of contractual duties; Count VI breach of a stock purchase contract; Count VII breach of a third-party beneficiary contract; Count VII wrongful impairment of security value; Hahn's Count IX and Hutchison's Count X allege derivative actions on behalf of Data Scan and TPS; Hahn's Count X and Hutchison's Count XI request a receiver; Hahn's Count XI claims loss of consortium; Hutchison does not allege loss of consortium, but his Count IX alleges wrongful impairment of a pledge agreement.

3. The policies in issue and their respective periods of coverage are: No. D–32–7615 (December 1, 1985 to February 1, 1986); No. AW–W–71–64–20 (December 1, 1985 to December 1, 1986); and No. AW–W–74–93–52 (December 1, 1986 to December 1, 1987).

derlying state complaints do not allege an "occurrence." Plaintiff states that the policy defines an "occurrence" as an "accident," which is an unintended or unexpected act. Defendants counter that the underlying complaints allege negligence, which comes within the definition of "accident."

■ An accident occurs when something unexpected, unintended and unusual happens. *Guerdon Industries, Inc. v. Fidelity Casualty Company of New York*, 371 Mich. 12, 18–19, 123 N.W.2d 143 (1963). Forseeable injuries are not accidental. *Century Mutual Insurance Company v. Paddock*, 168 Mich.App. 747, 751–752, 425 N.W.2d 214 (1988).

■ The underlying complaints allege two negligent acts. First, Hahn and Hutchison allege that defendants negligently failed to afford them their contractual rights due under their employment agreements. However, such nonfeasance of a contractual obligation does not create a cause of action in negligence. *Roberts v. Auto–Owners Insurance Company*, 422 Mich. 594, 603–604, 374 N.W.2d 905 (1985), *citing Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1956). Second, Hahn and Hutchison allege that defendants negligently evaluated their job performance, resulting in the wrongful discharge of Hahn and Hutchison. This allegation of negligence also fails to trigger Commercial Union's duty to defend and indemnify under the policy.

■ Michigan courts independently review a complaint's allegations of negligence to decide whether negligent or intentional acts caused the alleged injury; *see Ben Franklin Insurance Company of Michigan v. Harris*, 161 Mich.App. 86, 90, 409 N.W.2d 733 (1987). *See also Aetna Casualty & Surety Company v. Sprague*, 163 Mich.App. 650, 653–654, 415 N.W.2d 230 (1987). Therefore, I must analyze the gravamen of the state complaints, not merely the words used in those complaints.

■ In this case, Hahn and Hutchison essentially complain of defendants' intentional acts, not accidental occurrences.

Hahn and Hutchison allege that defendants terminated their employment in retaliation for their charge of corporate waste. Such termination was intentional. Even assuming the defendants negligently evaluated Hahn and Hutchison, the alleged cause of their termination was retaliation, an intentional act. All the remaining counts, including those alleging breach of the stock purchase agreement, also complain of intentional acts. Since Hahn and Hutchison did not allege that they were injured by an "occurrence," Commercial Union has no duty to defend or indemnify defendants against Hahn and Hutchison's state suits.

Although I hold that Commercial Union has no duty to defend or indemnify defendants because the underlying state claims do not allege a compensable "occurrence," I will address a further contention. The disputed insurance policy contains the following exclusion:

This insurance does not apply:

a. to liability assumed by the insured under any contract or agreement except an incidental contract. . . .

The policy defines an "incidental contract" as:

[A]ny written (1) lease of premises, (2) easement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement; . . . .

The Broad Form Comprehensive General Liability insurance policy modifies this definition as to the named insureds, Data Scan and TPS, in the following manner:

A. The definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured's business.

Defendant Belcher argues that since each of the underlying state claims relates to the conduct of the business of Data Scan, TPS and each of the individual defendants, these claims are each "incidental contracts" covered by the policy. Defend-

ants BAMI, Data Scan and TPS argue only that the underlying claims for their alleged negligent breach of employment contracts are covered by this provision of the policy.

Plaintiff argues that the term "incidental contract" applies only to specific agreements by the insured to assume another's liability. Further, BAMI's indemnification and hold-harmless agreement with Hahn and Hutchison does not relate to the conduct of the named insureds' business. Therefore, BAMI's agreement is not an incidental contract covered by the policy.

■ I agree that Hahn and Hutchison's employment contracts do not constitute covered "incidental" contracts. To fall within this provision, a contract must not only be incidental; the policy also requires that the contract be one in which the insured assumes liability. This incidental contract exception to the general exclusion would otherwise create coverage for all incidental contracts. However, exclusionary clauses such as this can never create coverage. *Fresard v. Michigan Millers*, 414 Mich. 686, 697, 327 N.W.2d 286 (1982). They limit the scope of the basic protection statement. *Id.* The Alaska Supreme Court also reached this conclusion when it interpreted the same insurance policy language. *Olympic, Inc. v. Providence Washington Insurance Company of Alaska*, 648 P.2d 1008, 1010 (Alaska 1982).

The phrase "liability assumed by the insured under any contract or agreement" does not refer to the type of liability incurred as a result of the breach of every contract. This phrase refers to a narrower class of contract liability:

> Liability insurance policies not infrequently contain provisions specifically excluding from coverage liability assumed by the insured under a contract not defined in the policy. Such provisions, which may be referred to as "contractual exclusion clauses," deny the coverage generally assumed by a liability policy in cases in which the insured in a contract with a third party agrees to save harmless or indemnify such third party.

12 *Couch on Insurance* § 44A:35 at p. 55 (2nd Ed.1981). *See also Western Fire In-*

*surance v. Snyder, Inc.*, 76 Mich.App. 242, 249, 256 N.W.2d 451 (1977). The purpose of these contractual exclusion clauses is not to make the insurer underwrite its insureds' contracts, but to limit coverage to the insured's tort liability. 12 Couch, *supra*, § 44A:36, at p. 57.

Hahn and Hutchison's employment contracts do not constitute the type of liability assumed by defendants under a contract which would bring these contracts within the policy's coverage. Defendants did not agree to indemnify Hahn and Hutchison in these contracts. Therefore, I need not decide whether these employment contracts are incidental. Commercial Union has no duty to defend or indemnify defendants for the state claims arising from these employment contracts.

■ Unlike Hahn and Hutchison's employment contracts, BAMI did allegedly agree to indemnify and hold Hahn and Hutchison harmless in the stock purchase agreement. However, this second agreement cannot constitute a covered incidental contract. Hahn and Hutchison's complaints allege that BAMI alone, not Data Scan or TPS, agreed to indemnify and hold them harmless from any BAMI breach of the purchase agreement. To fall within the expanded definition of incidental contract, this purchase agreement must relate to the conduct of the named insureds' business. The parties' records indicate, and defendants do not dispute, that Data Scan and TPS, not BAMI or the individual defendants, are the named insureds on the policies. BAMI is an insured. Therefore, BAMI's agreement to indemnify must relate to the conduct of Data Scan's or TPS's business to qualify as a covered incidental contract.

BAMI's indemnification agreement fails this requirement. In this purchase agreement, BAMI acquired 80% of Data Scan's and TPS's stock from Hahn, Hutchison and others. The two complaints also allege in Count VI, Paragraph 52, that:

i. defendant BAMI represented and covenanted that it would indemnify and hold harmless plaintiff[s] Hahn [and Hutchison] from March 15, 1985 until present from any material misrepresentation,

breach of warranty or nonfulfillment of any agreement on the part of BAMI under said March 15, 1985 agreement or any material misrepresentation made by defendant BAMI; ....

Paragraph 55 of this same Count alleges: e. defendant BAMI would indemnify, defend and hold harmless plaintiff[s] Gary Hahn [and Richard L. Hutchison] from any breach by defendant BAMI of the March 15, 1985 agreement; ....

Defendants have not argued that the stock purchase agreement generally, or BAMI's agreement to indemnify in particular, relates to the conduct of Data Scan's or TPS's business. I conclude that no such relation exists. BAMI's agreement relates to its acquisition of Data Scan and TPS, not the conduct of Data Scan's or TPS's own business. Thus, the stock purchase agreement is not a covered incidental contract. Commercial Union owes no duty to defend or indemnify defendants for the state claims arising from the stock purchase agreement, or from the employment contracts with Hahn and Hutchison.

Accordingly, plaintiff Commercial Union's motion for summary judgment, requesting a declaratory judgment that it has no duty under its relevant policies to defend or indemnify the defendants against Hahn and Hutchison's state claims, is GRANTED. Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.